EDWARD B. SALISBURY, Respondent, *v.* JOSEPH SEGAL, Appellant, Impleaded with THE BLOCK IRON AND METAL COMPANY, INC., Defendant.

Third Department, November 12, 1919.

Conversion — necessity that plaintiff show title in himself and that defendant took property — evidence examined — ability of plaintiff to cast doubt on defendant's title as tending to establish title in plaintiff.

To sustain a judgment in favor of the plaintiff in an action for conversion, the evidence must establish that the defendant took and disposed of the property in question, and that the plaintiff was the owner of the property.

In an action for the conversion of copper sulphate it appeared that a building belonging to a railroad company and standing on leased ground was occupied in part by a telegraph company and that the said copper sulphate accumulated under the building as a result of the practice of the telegraph company in emptying its battery cells into a sink with an outlet into an excavation under the building, and that it was not considered that this waste had any practical value. It appeared also that the railroad company after tearing down the building sold the " material " to the plaintiff's assignor and that the plaintiff removed the said material but did not do anything towards reducing the copper sulphate to possession. After the sale by the railroad company, the telegraph company sold the copper sulphate to the defendant's father-in-law who removed it from the premises with a team hired from the defendant. *Held*, on all the evidence, that the title to the copper sulphate was never in the railroad company and, therefore, the plaintiff did not acquire title through the assigned bill of sale from the company, and also that the defendant did not remove the said sulphate.

In an action for conversion the plaintiff must rely on his own title, and the fact that he may be able to cast doubt on the title of the defendant will not aid him to a recovery.

APPEAL by the defendant, Joseph Segal, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 1st day of March, 1919, upon the verdict of a jury rendered by direction of the court, certain specific questions having been submitted to the jury, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a nonsuit and directing a general verdict in favor of the plaintiff, and also from so much of an order entered in said clerk's office

on the 6th day of March, 1919, as denies defendant's motion for a new trial made upon the minutes.

*Robert Frazier,* for the appellant.

*McKelvey & Stenacher* [*George H. Stenacher* of counsel], for the respondent.

WOODWARD, J.:

The complaint alleges, aside from the formal averments, that " on or about the 20th day of May, 1916, plaintiff was the owner and entitled to the possession of two thousand nine hundred (2900) pounds of copper sulphate, generally known as blue vitriol, of the reasonable value of thirty (30) cents a pound, or eight hundred and seventy dollars," and that " on or about the 20th day of May, 1916, the defendant, Joseph Segal, unlawfully and wrongfully took and carried away the said goods, and converted them to his own use," and that the plaintiff has demanded and been refused the possession of the same.   Demand for judgment is for $870.

The defendant denies the ownership of the goods in the plaintiff, and the unlawful taking of the same; and the evidence was directed to the issue thus raised.   At the close of the plaintiff's evidence, and again at the close of the defendant's evidence, motions were made for a nonsuit and denied.   The court submitted to the jury, not the ownership of the property, but (1) " Did the defendant take and dispose of the property in question? " (answered in the affirmative by the jury), and (2) "What was the damage? "   This was placed by the jury at $125, which was subsequently reduced by the court to the sum of $54, for reasons not material to be considered on this appeal.   There was a stipulation " that the questions are to be decided by the court and that a nonsuit or a general verdict may be directed upon the findings, with the same force and effect as if the jury were present;" but we assume that the court was not authorized to make any findings which could not be legitimately deduced from the evidence, any more than the jury were authorized to reach determinations which were wholly without support in the evidence.   We are, therefore, unable to find justification

for the judgment in this case, *first*, because there is no evidence whatever that the defendant took and disposed of the property in question, and, *second*, because there is no evidence that the plaintiff was the owner of the particular property.

The case is peculiar in its facts, but that does not justify a verdict without support in the evidence; even though, as suggested by counsel for the respondent, the defendant's father-in-law is " a characteristic, long-bearded, old-fashioned, pack peddler," which alleged fact nowhere appears in the evidence. It appears from the evidence that the Boston and Maine Railroad Company maintained a freight station upon leased lands on Saratoga avenue in the city of Mechanicville for a number of years, and that the Western Union Telegraph Company occupied a portion of this building for the maintenance of its old-fashioned battery system used in connection with the operation of its lines which, in turn, were used in the conduct of the Boston and Maine railroad. That is, the Western Union Telegraph Company, in the operation of so much of its lines as was devoted to the business of the Boston and Maine railroad, made use of a portion of the railroad company's freight station in Mechanicville, and in course of time the practical operation of the battery room resulted in the accumulation of a considerable quantity of copper sulphate underneath the building. This resulted from the practice of emptying the battery cells into a sink with an outlet into the excavation beneath the building. It is entirely evident from the testimony that it was not realized that this material had any practical value, and so long as copper remained at normal figures it is doubtful if it would have been of sufficient consequence to give rise to litigation. It was just one of the wastes which have been so common in this country.

In the year 1916, however, the Boston and Maine Railroad Company demolished the freight station, and the Western Union, having in the meantime developed a new system of generating current, the battery room was discontinued, and the local representative of the Western Union Telegraph Company was directed to ship the materials on hand or to otherwise dispose of them. When the freight station building was torn down, the local engineer of the Boston and Maine

Railroad Company, it is conceded, had authority to sell or dispose of such personal property as remained upon the premises belonging to said company, and he did execute a bill of sale to one S. F. Campbell of "all the material on the site of the old freight and office building situated on Saratoga Ave., Mechanicville," and it is conceded that the word "material" is broad enough to include the sulphate of copper, without admitting that this material belonged to the Boston and Maine Railroad Company, or that its resident engineer had a right to dispose of it.

There is no evidence in the case that the resident engineer in disposing of the materials upon the premises had any idea that he was selling this sulphate of copper; no one appears to have regarded it as anything more than a dirt heap at the time of the making of the bill of sale on the 17th of April, 1916, and as it is admitted that there were several wagon loads of lumber, five or six tons of soft coal, some slate roofing and a considerable amount of scrap iron, and the consideration named in the bill of sale was only $100, it is entirely evident that there was no intention of passing title to nearly $900 worth of copper, such as is claimed in the complaint, and it can hardly be doubted that the materials resulting from the waste of the Western Union Telegraph Company belonged either to that corporation, or to the owner of the soil, with which it was mingled, and not to the Boston and Maine Railroad Company, which was merely a lessee of the premises. It is a significant fact that Salisbury, the plaintiff, who succeeded to the rights of Campbell, drew away the coal, the iron, the slate and the lumber, without doing anything toward reducing the sulphate of copper to possession, and that nothing was done in that direction until after the copper was taken away.

After the materials above enumerated had been removed, some one appears to have discovered the presence of this heap of refuse which had accumulated underneath the old building, and one William B. Murray, who testified that he was employed by the Western Union Telegraph Company as a lineman, and that he had charge of the materials of the said company, with authority to ship or dispose of the same, at the time of the demolition of the freight station, testifies that he sold this sulphate of copper, not to the defendant,

but to one Rome, the father-in-law of the defendant, and the evidence is wholly undisputed, from unimpeached witnesses, that Rome was the man who took the material away and sold it. There is an effort on the part of the plaintiff's attorney to show that the father-in-law was working for the defendant; that he was using the defendant's horse and wagon in removing the materials, but a careful reading of the evidence shows that this entirely failed. Rome testified that he hired the defendant's horse; that he used him to carry on a separate business, and that he alone had what was made. The defendant testifies to the same effect. There is no one who testifies that the defendant took the material from the premises. The direct and uncontradicted evidence is that he did not, and that Rome, who did take it, was not his agent or employee in the matter; and yet the jury has found that he took the property and disposed of it, and the court appears to have assumed that the sulphate of copper belonged to the Boston and Maine Railroad Company, and that its resident engineer sold it under the general terms of the bill of sale, though it is entirely obvious that the resident engineer, who was not produced as a witness, had no idea that he was selling a valuable property for the trifling sum of $100. If we leave out of consideration the general language of the bill of sale, which alone gives character to the transaction, there is not the slightest evidence in the case that the Boston and Maine Railroad Company had any ownership of this particular property, or that its resident engineer had it in contemplation when he issued the bill of sale in its general language. The court intimated strongly that the plaintiff should produce this witness, but the plaintiff elected to stand upon a vague and uncertain stipulation, afterward modified, which did not concede at any point ownership in the Boston and Maine Railroad Company, and we can discover no good reason for the assumption of such ownership. If the ownership of the Western Union Telegraph Company be conceded to be uncertain, it does not help the plaintiff. His right to recover depends upon the title being in the plaintiff, and to cast a doubt upon the ownership of the Western Union Telegraph Company, or of Rome, does not operate to establish title in the plaintiff, and without such title there is no ground for the

judgment in this case. The language of the bill of sale is satisfied by the transfer of the property which concededly belonged to the Boston and Maine Railroad Company, the lumber, the slate, the scrap iron and the coal; and this, undoubtedly, was fairly worth the $100 given in consideration, and everything points to the fact that Campbell, the purchaser, as well as the plaintiff, thought that this was what was included in the bill of sale, and it was only when this alleged " characteristic, long-bearded, old-fashioned pack peddler " thought to make a venture that the plaintiff conceived the forced construction which would enable him to claim title. It is significant that we find in the evidence no mention of the consideration between Campbell, the original purchaser, and Salisbury, the assignee of his rights.

The judgment and orders appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

All concurred, H. T. KELLOGG, J., not sitting.

Judgment and orders reversed on the law and facts, and new trial granted, with costs to the appellant to abide the event. The court disapproves of the finding that the plaintiff was the owner of the property and that the defendant wrongfully converted the plaintiff's property.